ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
**PANEL II**

| | | |
|---|---|---|
| **JOEL SOTO VEGA y otros**<br><br>Apelante<br><br>v.<br><br>**DEPARTAMENTO DE EDUCACIÓN y otros**<br><br>Apelado | TA2026AP00295 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.:<br>**CG2022CV03368**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, hoy 26 de mayo de 2026.

Comparece ante nos, el señor Joel Soto Vega y la señora Glenda Liz Colón Rodríguez, por sí y en representación de su hijo menor de edad, AJSC (en adelante, "parte apelante"). Solicitan que revisemos la *Sentencia* emitida el 6 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante la misma, el foro primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria* incoada por el Gobierno de Puerto Rico, por sí y en representación del Departamento de Educación (en adelante, "Gobierno de Puerto Rico", "Estado" o "parte apelada"). En consecuencia, desestimó con perjuicio la demanda de referencia.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

El 6 de octubre de 2022, el señor Soto Vega y la señora Colón Rodríguez, por sí y en representación de su hijo menor de edad, AJSC, presentaron una *Demanda* sobre daños y perjuicios contra el Departamento de Educación y otras partes. Alegaron que, el 8 de

noviembre de 2021, ocurrió un accidente en la Escuela Emérita León Candelas, Proyecto Montessori, ubicada en el municipio de Cayey, a la cual asistía su hijo de cuatro (4) años en ese entonces. Añadieron que, el menor estaba en el área del patio cuando sufrió una aparatosa caída y se golpeó la cabeza con el cemento. Argumentaron que la caída se debió a las malas condiciones del suelo en el área del patio, grave desnivel, desperfectos y falta del mantenimiento adecuado. Adujeron que al momento del incidente no se encontraba en el área ningún adulto a cargo de los menores, ni estaba presente el personal de seguridad escolar. Además, esbozaron que AJSC tuvo que recibir atención médica luego del accidente y que, tras ser evaluado por una neuróloga pediátrica, fue diagnosticado con epilepsia con periodos de ausencia.

A su vez, el señor Soto Vega y la señora Colón Rodríguez arguyeron que las condiciones peligrosas del plantel escolar eran de conocimiento del Departamento de Educación o que su conocimiento podía imputársele. Precisaron que, como consecuencia de la caída, AJSC recibió un extenso tratamiento médico debido a los daños físicos sufridos. En síntesis, reclamaron en la demanda una suma ascendente a dos (2) millones de dólares por los daños y sufrimientos mentales del menor y sus propios daños.

Tras múltiples trámites procesales no necesarios de pormenorizar, el 22 de diciembre de 2023, el Gobierno de Puerto Rico, en representación del Departamento de Educación, contestó la demanda y negó la mayoría de las alegaciones. Como defensas afirmativas, incluyó, entre otras, que la demanda no exponía una reclamación que justificara la concesión de un remedio, que actuó prudentemente observando todas las precauciones debidas y no incurrió en actuaciones u omisiones culposas o negligentes de clase alguna, que la cuantía reclamada excedía los límites establecidos en

nuestro ordenamiento jurídico y que no existía relación causal entre los actos realizados por los oficiales del Estado con el alegado daño que se reclamaba en la *Demanda.*

El 15 de diciembre de 2025, el Departamento de Educación incoó una *Moción de Sentencia Sumaria.* Esencialmente, alegó que, no existía prueba sobre el desnivel del suelo en el área del patio, las malas condiciones o la falta de mantenimiento que se le imputaron como la causa de la caída del menor. Además, sostuvo que en la propia *Demanda* se admitió que la guardia de seguridad escolar se encontraba en el patio en el momento de la caída. Asimismo, afirmó que AJSC no tuvo un diagnóstico de epilepsia, no había recibido tratamiento alguno por epilepsia ni le fueron recetados medicamentos sobre epilepsia y que, aun teniendo tal diagnóstico, lo cual negó, entendía que el señor Soto Vega y la señora Colón Rodríguez no habían presentado prueba para relacionarlo con el accidente.

En armonía con lo anterior, el Departamento de Educación arguyó que en la escuela Emérita León Elemental, a través de la dirección escolar, se tomaron las medidas necesarias de protección, seguridad y vigilancia adecuada durante el periodo de recreo de los estudiantes el día de los hechos. Particularizó que: (1) el área del patio se encontraba en buenas condiciones, sin desnivel o falto de mantenimiento y (2) el grupo de estudiantes, compuesto por unos cuatro (4) niños, entre estos, AJSC, estuvieron supervisados adecuadamente durante el periodo de recreo por personal designado por la administración escolar. Aseveró que no se trató de una ausencia de vigilancia adecuada, sino de un hecho que no se pudo evitar. Reiteró que el Estado no era responsable de los daños alegados en la *Demanda* y no estaba obligado a conceder ningún tipo de indemnización. Así, esgrimió que el asunto litigioso en controversia era si procedía que se dictara sentencia sumaria ante

la ausencia de responsabilidad del Estado, considerando la insuficiencia de evidencia para sostener las alegaciones. Incluyó en su moción 22 hechos materiales sobre los cuales entendía que no existía controversia.[1]

En respuesta, el 14 de enero de 2026, el señor Soto Vega y la señora Colón Rodríguez se opusieron a la solicitud de sentencia sumaria. Esencialmente, arguyeron que no procedía dictar sentencia sumaria porque existían controversias genuinas de hechos materiales sobre la supervisión, la condición peligrosa del área y el nexo causal del incidente, y porque el Estado no cumplió con la carga estricta de la Regla 36 de Procedimiento Civil, *Infra*. Sostuvieron que la causa próxima de los daños alegados en la demanda se originaron por la culpa y/o negligencia del Estado, quien, a través de los actos u omisiones, incumplió con sus responsabilidades civiles. Alegaron que el Estado era directamente responsable por los daños ocasionados, al permitir que en un plantel escolar existiera un desnivel en el área del patio donde se recreaban menores de edad sin tener supervisión adecuada. Manifestaron que lo anterior denotó un claro incumplimiento con la ley, la moral, el orden público, y la jurisprudencia de nuestro más Alto Foro respecto al deber de cuidado y previsibilidad más estricto que debe existir en los planteles escolares que se dedican a la educación de menores de edad.

Por igual, el señor Soto Vega y la señora Colón Rodríguez argumentaron que existía evidencia documental demostrativa de que el personal escolar tenía conocimiento de las condiciones peligrosas existentes en el área donde ocurrió el accidente, así como de la necesidad de adoptar medidas especiales de manejo y supervisión respecto al menor. Recalcaron que la causa próxima del

---

[1] Anejó a su petitorio de sentencia sumaria nueve (9) documentos, relacionados a distintas evaluaciones y récords médicos del menor AJSC.

daño sufrido por AJSC no fue un evento fortuito, sino la omisión del Estado de ejercer una supervisión razonable y adecuada. Identificaron 10 hechos sobre los cuales entendían que existía controversia.[2]

Evaluadas las posiciones de las partes, el 6 de marzo de 2026, el foro primario dictó la *Sentencia* que hoy revisamos. Por medio de ésta, declaró *Ha Lugar* la *Moción de Sentencia Sumaria* instada por el Gobierno de Puerto Rico, en representación del Departamento de Educación y desestimó con perjuicio la *Demanda* de epígrafe. En su dictamen, el foro *a quo* incluyó las siguientes determinaciones de hechos:

1. El día 8 de noviembre de 2021 el menor AJSC sufrió una caída mientras se encontraba jugando en el patio de la Escuela Especializada Emérita León Candelas, Proyecto Montessori, que ubica en la Calle F, jurisdicción de Cayey.

2. El menor AJSC, al momento de la caída contaba con 4 años, pertenecía al grupo Casa de Niños 3 y se encontraba dentro de los predios de dicha escuela durante el horario escolar.

3. El menor AJSC, sufrió un golpe en la parte frontal de la cabeza.

4. Al momento que ocurrió el accidente la guardia de seguridad escolar se encontraba a cargo del patio escolar en donde el menor AJSC se encontraba.

5. El menor se encontraba bajo la vigilancia adecuada de la guardia escolar en la hora de recreo en el patio escolar.

6. El 8 de noviembre de 2021 el menor AJSC recibió asistencia médica en la Sala de Emergencias del Hospital Menonita de Cayey.

7. En la Sala de Emergencias del Hospital Menonita de Cayey, luego de evaluación le diagnosticaron trauma en la cabeza, "*Head trauma in child*", sin fractura, con una disposición de cuidado en el hogar y unas instrucciones sobre cuidado de primeros auxilios sobre lesiones en la cabeza, "*First Aid Head Injuries*".

8. El 2 de diciembre de 2021 el menor AJSC fue atendido en la sala de emergencia del Hospital Menonita de Cayey. Luego de la evaluación, le diagnosticaron dolor de cabeza "*headache*" con una disposición de cuidado en el hogar y unas

---

[2] Anejó a su escrito 15 documentos, relacionados a varias evaluaciones y récords médicos de AJSC, reportes del incidente, así como fotos del área del accidente y de los daños alegados por el menor.

instrucciones sobre cuidados de dolor de cabeza, "*headaches self care*".

9. El 8 de diciembre de 2021 el menor AJSC fue atendido en el departamento de emergencias en el Hospital Pediátrico Universitario para evaluación. Luego de la evaluación le diagnosticaron trauma en la cabeza, "*Head Trauma*" con una disposición de cuidado en el hogar sin prescripción de medicamentos y unas instrucciones sobre epilepsia de ausencia infantil. "*Childhood absence epilepsy*".

10. El 26 de enero de 2022 el menor AJSC fue atendido por la Dra. Jocelyn Montalvo Ortiz, neuróloga Pediátrica- quien luego de efectuar un electroencefalograma ambulatorio al menor AJSC - reportó un resultado de "*Abnormal ambulatory EEG*" y lo refirió a un electroencefalograma (EEG) con el propósito de evaluar la posibilidad o diagnóstico de epilepsia.

11. Del 4 al 10 de abril de 2022 el menor AJSC fue admitido a la Unidad de Comprensiva de Epilepsia del Manatí Medical Center. Luego de efectuarle al menor AJSC electroencefalogramas (EEG) por cuatro (4) días consecutivos, el resultado fue un electroencefalograma normal, "*Normal Prolonged video- EEG*", sin ninguna consideración adicional. No fue diagnosticado con epilepsia.

12. El menor AJSC no recibió tratamiento en la Unidad Comprensiva de Epilepsia del Manatí Medical Center por un periodo de dos (2) años para recibir tratamientos.

13. La admisión a la Unidad Comprensiva de Epilepsia del Manatí Medical Center fue por un periodo de cuatro (4) días desde el 6 de abril de 2022 hasta el 10 de abril de 2022 para realizarle un electroencefalograma (EEG) con el propósito de evaluar la posibilidad o diagnóstico de epilepsia.

14. El 28 de febrero de 2022 el menor AJSC fue nuevamente atendido por la Dra. Jocelyn Montalvo Ortiz quien tomó conocimiento en el récord médico del electroencefalograma normal, "*Normal Prolonged video- EEG*". No fue diagnosticado con epilepsia.

15. El 30 de agosto de 2022 el menor AJSC fue atendido por la Dra. Jocelyn Montalvo Ortiz quien le diagnóstico déficit de atención e hiperactividad. No fue diagnosticado con epilepsia.

16. El 27 de marzo de 2023 el menor fue atendido por la Dra. Jocelyn Montalvo Ortiz quien le diagnóstico Déficit de Atención e Hiperactividad (lo que comúnmente se conoce como ADHD por sus siglas en inglés) y mirada fija "*spelling spells*". No fue diagnosticado con epilepsia.

17. El 30 de enero de 2024 el menor fue atendido por la Dra. Jocelyn Montalvo Ortiz quien repitió el diagnóstico de Déficit de Atención e Hiperactividad, movimientos anormales involuntarios, "*Unspecified abnormal involuntary movements*" y un tic sin

especificar, "*tic disorder, unspecified*". No fue diagnosticado con epilepsia.

18. No surge de la prueba de que el menor AJSC se cayera por algún desnivel y/o desperfecto y/o condiciones peligrosas del suelo.

19. No surge de la prueba lesiones incapacitantes sufridas por el menor que conlleven la pérdida de ingresos futuros de este.

20. El ELA/DEPR actuó prudentemente observando todas las precauciones debidas y no incurrió en actuaciones u omisiones culposas o negligentes de clase alguna.

21. No existe relación causal entre los actos realizados por los oficiales del Estado con el alegado daño que reclama la parte demandante.

22. Las actuaciones del Estado estuvieron enmarcadas en la licitud de sus acciones.

23. La parte demandante no cuenta con prueba pericial para sustentar sus alegaciones de negligencia.

El juzgador de los hechos concluyó que el señor Soto Vega y la señora Colón no presentaron prueba alguna sobre que el menor se cayó debido a un desnivel en el suelo del plantel escolar y, por tanto, que ello constituyó la causa próxima del accidente. En ese sentido, expuso: "[e]sta prueba sería indispensable para que lo ocurrido fuese previsible, y la omisión desplegada por la parte demandada pudiera dar paso a una posible negligencia. Por tanto, el presente caso no cumple con el elemento de causalidad adecuada."

Además, el TPI expresó que tampoco se presentó prueba alguna que sustentara que la guardia escolar, como adulto responsable de la vigilancia y seguridad en el patio, no era el personal adecuado para atender el grupo de cuatro (4) niños con los que el menor AJSC salió a recrearse el 8 de noviembre de 2021. Subrayó que no bastaba que aconteciera un accidente para imponer responsabilidad por daños a una parte, sino que era necesario que la parte que reclama la existencia de responsabilidad demuestre, por preponderancia de la prueba, la realidad del daño sufrido, la

existencia de un acto u omisión negligente, y la relación causal entre esa acción y lo que ordinariamente produce el daño.[3]

Así las cosas, el Tribunal opinó que los hechos acaecidos el 8 de noviembre de 2021 constituyeron un "incidente aislado y lamentable" que no pudo evitarse; específicamente "un accidente de un niño jugando en un patio escolar, con vigilancia adecuada y que aún con la más estricta supervisión ocurrió una situación que no se pudo prever o evitar."

Por último, el TPI determinó lo siguiente:

[E]ste Tribunal no tuvo ante sí prueba de que el menor AJSC tuvo un diagnóstico de epilepsia, haya recibido tratamiento por epilepsia, se le haya recetado medicamentos para tratar algún tipo de epilepsia y que, aun teniendo tal diagnóstico, tampoco cuenta con prueba pericial para sustentar que el alegado diagnóstico de epilepsia esté relacionado con la caída y así sustentar sus alegaciones de negligencia.

Insatisfechos, los padres de AJSC comparecen ante nos y alegan que el TPI cometió los siguientes errores:

Erró el Tribunal de Primera Instancia al dictar sentencia sumaria a favor del Estado Libre Asociado de Puerto Rico y el Departamento de Educación, a pesar de existir controversias genuinas de hechos materiales relacionadas con la condición del área donde ocurrió el accidente, la supervisión del menor y las circunstancias específicas en que ocurrieron los hechos.

Erró el Tribunal de Primera Instancia al no analizar ni adjudicar adecuadamente la teoría de responsabilidad basada en la falta de supervisión del menor dentro del plantel escolar, a pesar de tratarse de una teoría de responsabilidad claramente planteada por la parte demandante y sostenida por el propio expediente judicial.

Erró el Tribunal de Primera Instancia al considerar y adjudicar la moción de sentencia sumaria a pesar del calendario procesal previamente establecido por el propio tribunal para el cierre del descubrimiento de prueba y la presentación de mociones dispositivas, en contravención a sus órdenes procesales previas.

Erró el Tribunal de Primera Instancia al evaluar, descartar o minimizar prueba documental sometida por la parte demandante en oposición a la solicitud de sentencia sumaria, incluyendo fotografías del área donde ocurrió el incidente y documentación relacionada

---

[3] Citando a *Elba A.B.M. v. U.P.R.*, 125 DPR 294, 310 (1990); *Montalvo v. Cruz*, 144 DPR 748, 756 (1998); *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).

con la supervisión del menor, resolviendo implícitamente controversias de hechos materiales que requerían la celebración de un juicio en su fondo.

Erró el Tribunal de Primera Instancia al extralimitarse en sus funciones adjudicativas al utilizar el mecanismo de sentencia sumaria como sustituto de un juicio en su fondo, formulando inferencias fácticas no sustentadas por evidencia admisible en autos y consignando como "determinaciones de hechos" conclusiones jurídicas propias de la adjudicación en juicio. En particular, el tribunal adjudicó anticipadamente los elementos esenciales de la causa de acción al concluir que la supervisión era adecuada, que el Estado actuó prudentemente y que no existía relación causal, asuntos que constituyen cuestiones de hecho y credibilidad que solo podían resolverse en un juicio en su fondo.

Por su parte, el 20 de abril de 2026, el Gobierno de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico, presentó su *Alegato en Oposición*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

La Regla 36 de las de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).[4] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria

---

[4] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación.  32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023).  La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta.  Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión, supra*, págs. 213-214, seguido en *Meléndez González v. M. Cuebas, supra*, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma, los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria.  Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable,

y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de las de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, *supra*, págs. 215-216.

La Regla 36.4 de las de Procedimiento Civil establece que, si no se dicta sentencia sobre la totalidad del pleito ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y, por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, *supra*, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos

que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial, y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas, supra*, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme con ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas, supra*, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

### B.

El Artículo 1536 del Código Civil de Puerto Rico de 2020 dispone que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. Asimismo, para que surja la responsabilidad civil que regula el mencionado

artículo, la parte demandante deberá establecer: (1) la existencia del daño, (2) la ocurrencia del acto culposo o negligente del demandado, y (3) el nexo causal entre ese evento culposo o negligente y el perjuicio sufrido. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 485 (2022); *López v. Porrata Doria,* 169 DPR 135, 150 (2006).

La culpa o negligencia es la falta del debido cuidado que consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente y razonable habría de prever en las mismas circunstancias. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra; *Valle v. E.L.A,* 157 DPR 1, 18 (2002).

El deber de previsión es el criterio central para que se adjudique responsabilidad por culpa o negligencia. *Cruz Flores et al. v. Hosp. Ryder et al., supra.*[5] El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. *Elba A.B.M. v. U.P.R.*, supra, pág. 314. Ciertamente, una persona no está obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación porque se convertiría en una responsabilidad absoluta. *Rivera Pérez v. Cruz Corchado,* 119 DPR 8 (1987); *Pacheco v. AFF,* 112 DPR 296 (1982).

Así, la diligencia exigible es la que cabe esperar del ser humano medio, el buen padre de familia. Si el daño es previsible por éste hay responsabilidad, si no lo es, se estaría generalmente en presencia de un caso fortuito. Por último, no basta que concurran un daño y una acción u omisión negligente. Para generar responsabilidad, es imperativo un nexo causal entre el daño y el acto

---

[5] Es importante destacar que, el deber de previsión no se extiende a todo riesgo posible; más bien, se debe examinar si un daño pudo ser el resultado natural y probable de un acto negligente. Es decir, se debe evaluar si después del suceso, ponderado retrospectivamente, tal daño aparece como la consecuencia razonable y ordinaria del acto que se alega fue negligente. *Íd.*; *Hernández Vélez v. Televicentro,* 168 DPR 803, 831 (2006); *Valle v. E.L.A, supra.*

culposo o negligente. *Tornos Arroyo v. D.I.P.*, 140 DPR 265, 271-274 (1996).[6]

Por otra parte, los elementos a considerarse en la determinación de si una omisión genera responsabilidad son: (l) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Soc. Gananciales v. González Padín Co., Inc.*, 117 DPR 94 (1986).

Ahora bien, en *Elba A.B.M. v. U.P.R.*, *supra*, pág. 314, nuestro más Alto Foro expresó que:

> [E]xisten ciertos tipos de actividades, tales como las llevadas a cabo por las escuelas, que por su naturaleza esencial, vienen 'obligad[as]' a ofrecer un grado de protección y seguridad independiente del que puedan proveer las agencias de seguridad pública'... Es el incumplimiento con este deber unido al hecho de que el daño sea uno previsible y su incumplimiento la causa adecuada, lo que responsabiliza a la institución. El grado de seguridad que viene obligada a ofrecer una institución educativa depende de la naturaleza de la institución, su localización y la manera en que funciona y ofrece sus servicios.

Sobre el estándar de cuidado exigible a los planteles escolares y sus alrededores, el Tribunal Supremo de Puerto Rico ha establecido que, aunque no es absoluto, es más riguroso. *Tornos Arroyo v. D.I.P.*, *supra*, pág. 271. El Estado debe estar atento para que en los planteles de enseñanza exista vigilancia adecuada y se tomen todas las medidas necesarias para velar por el bienestar y la seguridad de los miles de estudiantes que asisten a las escuelas públicas. Sin embargo, sería irrazonable hacerlo responsable de toda posible lesión que sufra un estudiante. *Colón Rivera v. ELA*, 99 DPR 741, 742-743 (1971).

Respecto a lo anterior, en *Cruz Costales v. E.L.A.*, 89 DPR 105, 111 (1963), el Tribunal Supremo de Puerto Rico realizó las

---

[6] Citando a C. Rogel Vide, *La Responsabilidad Civil Extracontractual*, Ed. Civitas, 1976, págs. 90-91, *Jiménez v. Pelegrina Espinet*, 112 DPR 700, 704 (1982) y otros.

siguientes expresiones: "…generalmente los niños son impulsivos y poco precavidos y es natural que en grupos de cientos y de miles de estudiantes que concurren a las escuelas den lugar a accidentes desgraciados, algunos de los cuales pueden preverse y evitarse por los maestros, pero otros son, desafortunadamente, imposible de prever y de evitar." Es importante recordar que el Estado no es garantizador absoluto del bienestar público. *Tornos Arroyo v. D.I.P., supra.*

## III.

Por tratarse de una sentencia sumaria, debemos evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Así pues, examinamos la *Moción de Sentencia Sumaria* presentada por la parte apelada y la *Oposición a Solicitud de Sentencia Sumaria* de la parte apelante. Adelantamos que, luego de un análisis minucioso del expediente, así como de la normativa aplicable, concluimos que los errores señalados por la parte apelante no se cometieron. Por tanto, no incidió el foro primario al conceder el remedio sumario en cuestión. Veamos.

Mediante sus cinco (5) señalamientos de error, la parte apelante esencialmente alega que procede la revocación de la *Sentencia* por ser el resultado de: (1) la adjudicación indebida de controversias de hechos materiales, (2) la omisión de analizar adecuadamente la teoría de responsabilidad por falta de supervisión, (3) la evaluación y descarte de prueba documental en la etapa sumaria, y (4) la conversión de conclusiones jurídicas en determinaciones de hechos.

Es su contención que el expediente judicial demuestra la existencia de múltiples controversias sustanciales de hechos materiales relacionadas con aspectos medulares de la causa de acción, a saber: (1) la condición física del área donde ocurrió el

accidente, (2) la supervisión efectiva del menor al momento de los hechos, y (3) las circunstancias específicas bajo las cuales ocurrió el incidente. Sostiene que, al descartar evidencia admisible y resolver conflictos probatorios que debían ser adjudicados mediante la evaluación de prueba en un juicio, el Tribunal de Primera Instancia se extralimitó en el ejercicio de sus funciones adjudicativas y la privó de su derecho a que un juzgador de hechos evaluara la evidencia presentada.

La parte apelante hace hincapié en que sometió fotografías del lugar concernido que levantaban una controversia directa sobre los desniveles o desperfectos peligrosos del patio. Expone que también existe en el récord el informe de investigación preparado por la parte apelada que demuestra una controversia sobre quién tenía la responsabilidad de supervisar a AJSC al momento del incidente, así como sobre las circunstancias bajo las cuales los menores fueron llevados al área recreativa. Razona que todo lo anterior incide directamente en la determinación de negligencia y previsibilidad del daño y nexo causal, elementos esenciales de la *Demanda*.

Asimismo, la parte apelante esboza que el Tribunal de Primera Instancia consignó en su dictamen como determinaciones de hechos incontrovertidos múltiples conclusiones que no están sustentadas por evidencia admisible en el expediente. Entre estas, las número 5, 18, 20, 21, 22 y 23. Además, alega que estas constituyen inferencias fácticas o conclusiones jurídicas que únicamente podían resolverse mediante la celebración de un juicio en su fondo.

Por otro lado, la parte apelada está de acuerdo con la *Sentencia* impugnada. Argumenta que la evidencia sometida a la consideración del Tribunal de Primera Instancia correctamente apreció que la parte apelante no cuenta con prueba para sustentar el daño alegado como resultado de la caída del menor, es decir, un diagnóstico de epilepsia. Precisa que tampoco surge del expediente

prueba de índole médica afirmativa de que el menor recibiera algún tratamiento conforme al referido diagnóstico.

Cónsono con lo anterior, la parte apelada discute que durante el descubrimiento de prueba no se sometió evidencia sobre que la causa por la que se cayó el menor en el patio fue por un desnivel o desperfecto en el suelo. En su parecer que dicha evidencia era necesaria para probar ese alegado hecho esencial. Por otra parte, explica que no existe evidencia de que la guardia de seguridad no era el personal adecuado para ser responsable de la vigilancia y seguridad del patio escolar o que hubo ausencia de vigilancia adecuada. En conclusión, entiende que, ante la insuficiencia de prueba de la parte apelante sobre los elementos básicos de su reclamación, el Tribunal de Primera Instancia correctamente dictó sentencia sumaria y desestimó el pleito de referencia.

Por último, con relación al tercer señalamiento de error, en el cual la parte apelante alega que el Tribunal de Primera Instancia ignoró el calendario procesal establecido al permitir la adjudicación sumaria del caso, la parte apelada difiere. Sostiene que del tracto fáctico del caso surge que, durante la conferencia con antelación a juicio, el foro apelado concedió hasta el 15 de diciembre de 2025 para presentar las mociones dispositivas. Añade que el Tribunal de Primera Instancia lo autorizó a presentar una moción de sentencia sumaria, lo cual hizo precisamente el 15 de diciembre de 2025.

Tras un análisis del expediente, colegimos que no existen controversias de hechos materiales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria en este caso. La parte apelada anejó a su solicitud de sentencia sumaria suficiente evidencia documental para probar cada una de sus alegaciones, por lo que demostró que no existían hechos materiales controvertidos que impidieran que el TPI dispusiera del asunto de forma sumaria.

En primer orden, cabe destacar que el TPI actuó correctamente al concluir que la parte apelada presentó la *Moción de Sentencia Sumaria* dentro del término dispuesto; esto es el 15 de diciembre de 2025.

En cuanto al argumento de la parte apelante respecto a que la disposición sumaria del presente caso resultó prematura e improcedente, pues el expediente demuestra la existencia de controversias sustanciales, concluimos que no le asiste la razón.

No surge de la demanda, ni de la oposición a la sentencia sumaria, algún hecho demostrativo que establezca que la parte apelada debe responder por la caída de AJSC en el patio del plantel escolar. Resulta evidente que la parte apelante falló en presentar prueba sobre que el menor se cayó debido a un desnivel en el suelo y, por tanto, que ello constituyó la causa próxima del accidente.

De la evidencia provista por la parte apelada surge que, aunque ciertamente es previsible que un niño de cuatro (4) años se caiga mientras juega en el patio, debido a la forma y las circunstancias en que aconteció la caída, era imposible haberla evitado. Nótese que ello no ocurrió en un área sin supervisión, pues en el récord hay prueba demostrativa de que estaba presente la guardia de seguridad del plantel. De hecho, fue ella quien actuó con agilidad y prontitud al ver lo acaecido, tomó al menor en sus brazos y lo llevó a la oficina para que este fuera atendido. Lo anterior demuestra que la parte apelada actuó conforme un buen padre de familia. El hecho de si la guardia escolar era quien debía o no estar supervisando a los menores es un asunto administrativo interno que no hace más posible o menos posible la ocurrencia de la caída. Así, entendemos que lo sucedido constituyó un hecho súbito y fortuito que, aun bajo la más estricta vigilancia, no se podía evitar.

En relación al daño alegado por la parte apelante, sostenemos que esta no trajo ante la consideración del Tribunal prueba

fehaciente de que AJSC fue diagnosticado con epilepsia, haya recibido tratamiento por epilepsia o se le haya recetado medicamentos para tratar algún tipo de epilepsia a causa de la caída.

En la demanda se alega que la caída de AJSC tuvo como consecuencia un diagnóstico de epilepsia con periodos de ausencia y daños físicos. Sin embargo, de los documentos que obran en el récord no se desprende dicho diagnóstico. Más bien, estos demuestran que AJSC visitó la sala de emergencias del Hospital Menonita el 8 de noviembre de 2021 y el 2 de diciembre de 2021. En ambas visitas se le realizó un CT de cabeza y cerebro, arrojando resultados negativos. A su vez, el 8 de diciembre de 2021, AJSC visitó la sala de emergencias del Hospital Pediátrico Universitario. En esa ocasión la impresión diagnóstica fue de "*head trauma*" y "*new onset seizure*". Del resumen de dicha visita se desprende que personal de neurología orientó a la madre sobre los próximos pasos y evaluaciones del menor.

Igualmente, surgen del expediente evaluaciones de la doctora Jocelyn Montalvo Ortiz, neuróloga pediátrica.  Esta ordenó que se le realizara un electroencefalograma prolongado (EEG) de 24 horas que tuvo un resultado anormal debido a "*epileptiform discharges over bilateral occipital, and right temporal area, sleep activated.  These findings suggest a focal cerebral disturbance with irritative activity. There are no significant asymmetries.*"  Ante ello, AJSC fue admitido en la unidad de monitoreo de epilepsia del Manatí Medical Center del 6 al 10 de abril de 2022 para efectuar un electroencefalograma prolongado con video.  Posteriormente, el mencionado EEG tuvo resultados normales y, según surge de la impresión: "*no epileptiform abnormalities or lateralizing sighs were noted. No seizures were recorded. Habitual episodes were not captured …*" Asimismo, hay en el récord otras consultas de la doctora Montalvo Ortiz en las cuales

diagnostica a AJSC con déficit de atención y concentración, trastorno de tic (vocal y motor) provisional y mirada fija ("*staring spells*"), no epiléptica. Lo anterior demuestra que, en efecto, no existe un diagnóstico de epilepsia, según alegó la parte apelante.

En suma, concluimos que no procede la causa de acción objeto de la demanda, toda vez que no surgen hechos demostrativos que señalen que la parte apelada actuó negligentemente y debía responder por los daños reclamados por la parte apelante. Por lo tanto, colegimos que el foro primario no erró en su dictamen sumario. Procede confirmar la *Sentencia* impugnada.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones